## OLE WARNE, Respondent, v. M. B. FINSETH, Appellant.

(195 N. W. 573.)

**Fraud — seller intending to deceive may not urge buyer could have discovered falsity of representation.**

1. Ordinarily, one who buys property has a right implicitly to rely upon

Note.—(1) Rules as to right to rely on representations, see notes in 37 L.R.A. 594; L.R.A.1917C, 273; 12 R. C. L. 378; 2 R. C. L. Supp. 1422.

(2) Waiver of right of action for damages for fraud or deceit, see note in L.R.A. 1918A, 106; 12 R. C. L. 411; 2 R. C. L. Supp. 1424; 4 R. C. L. Supp. 757; 5 R. C. L. Supp. 644.

representations of the seller; and, if they were false and made with intent to deceive the purchaser, the seller will not be allowed to urge that the buyer, by investigation, could have discovered their falsity. Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066, followed.

**Fraud — purchaser held not to have waived right of action.**

2. Certain contentions advanced by the defendant to the effect that plaintiff has waived his right of action for fraud and deceit considered, and for reasons stated in the opinion *held* not well founded.

**Fraud — purchaser may rescind or affirm transaction.**

3. A party who has been induced to purchase property by means of certain false and fraudulent representations by the seller, on discovery of the fraud, has the option of rescinding or affirming the transaction.

**Fraud — one electing to affirm transaction entitled to damages.**

4. In case of affirmance, he retains what he has received, and is entitled to be compensated for the damages he has sustained by the false representations.

**Fraud — measure of damages stated.**

5. Where the defrauded party affirms the transaction and brings an action to recover damages for the deception practiced upon him in inducing him to purchase the property, the measure of his damages, in the absence of a claim for special or exemplary damages, is the difference in value between what was received and what would have been received had the representations been true.

**Appeal and error — theory as to measure of damages accepted in trial court adhered to in appellate court.**

6. Where a certain theory as to the measure of damages or the amount of recovery is accepted or acted upon by the parties in the trial court as the proper one, it must be adhered to in the appellate court whether it is correct or not.

Opinion filed October 26, 1923.   Rehearing denied November 10, 1923.

Appeal and Error, 3 C. J. § 631 p. 737 n. 59.  Fraud, 26 C. J. § 59 p. 1143 n. 16: 27 C. J. §§ 128 p. 18 n. 33; 130 p. 19 n. 49; 131 p. 20 n. 52; 133 p. 20 n. 58: 135 p. 23 n. 89, 91, 92; 243 p. 92 n. 60.

Appeal from the District Court of Burleigh County, *Coffey,* J.
Defendant appeals from a judgment and from an order denying

(5) Measure of damages for fraudulent representations in the sale or exchange of real estate, see notes in 8 L.R.A.(N.S.) 804; 16 L.R.A.(N.S.) 818; 12 R. C. L. 453; 2 R. C. L. Supp. 1429; 4 R. C. L. Supp. 758; 5 R. C. L. Supp. 645.

(6) General rule as to theory of case, see 2 R. C. L. 79; 1 R. C. L. Supp. 387; 4 R. C. L. Supp. 79; 5 R. C. L. Supp. 68.

his motion for judgment notwithstanding the verdict or for a new trial.

Affirmed.

*F. H. Register* and *Zuger & Tillotson,* for appellant.

While this action is not in the form of a suit for rescission, yet the principles governing such suits apply. The general principles of waiver and laches applicable in suits for rescission are applicable here; the object sought by the plaintiff is substantially the same as if he had brought suit for rescission of the contract and prayed for a recovery of the purchase price and money paid for improvements. 24 Am. & Eng. Enc. Law, 625 et seq.

Now it is an old and well established rule of law that if the vendee without cause refuses to perform his part of the agreement, or is in default in making payments thereunder, he is in no position to recover what he has paid, and an action for that purpose will not lie. 29 Am. & Eng. Enc. Law, 729.

"Where a party intends to abandon or rescind a contract on the ground of a violation of it by the other, he must do so promptly and decidedly on the first information of such breach. If, with full knowledge, or with sufficient notice of means of knowledge of his rights and of all the material facts, he lies by for a considerable time, or abstains from impeaching the transaction, so that the other party is induced to suppose that it is recognized, this will be an acquiescence, and the transaction, although originally impeachable, ceases to be so in equity." 2 Warvelle, Vendors, p. 836.

In an action at law for the recovery of money paid under a contract one cannot recover it back unless it appears from the whole case that he is entitled to a rescission of the contract. Distler v. Dabney (Wash.) 35 Pac. 138; Thomas v. McClure (Wash.) 53 Pac. 161; Vaughn v. Smith (Or.) 55 Pac. 99; Gustafson v. Rustemeyer (Conn.) 38 L.R.A. 644.

Fraud cannot be ordinarily predicated upon a misrepresentation of value made by the vendor to the vendee. It is understood that such statements are expressions of opinion made to induce a sale; that the vendor is likely to exaggerate; that they are trade talk; and that they did not justify reliance. Adams v. Steombrecher (Minn.) 133 N. W. 477; Roseburg v. Walker (Minn.) 127 N. W. 467.

"In a legal sense a person is not damaged by a false representation by which he is not influenced. It is incumbent upon the party claiming to recover in an action for deceit, founded upon false representations, to show that he was induced by him." Taylor v. Guest, 58 N. Y. 262.

One who remains in possession, enjoying the advantage and benefits of land, under a contract of purchase without complaint or offer to rescind until required to perform the obligations of the contract of purchase, is estopped from recovery. McCourt v. Johns (Or.) 53 Pac. 610.

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon discovery of the facts, at once announce his purpose and adhere to it. If he be silent and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before existed." Grymes v. Sanders, 93 U. S. 62, 23 L. ed. 801. Faulkner v. Wassner (N. J.) 77 Atl. 34, 30 L.R.A.(N.S.) 872 and note.

*W. L. Smith,* for respondent.

"This rule seems to be well established both in this and other jurisdictions that 'as a rule, if there is any evidence which, standing alone, or considered apart from the opposing evidence, is, if believed by the jury, legally sufficient or might reasonably tend to support the verdict, though such evidence may not be of any entirely certain and satisfactory nature it will not be disturbed; for upon the mere weight of the evidence the jury are the judges, and, though the evidence would not have satisfied the mind of the appellate court upon an original investigation, yet it will not sit to weigh conflicting evidence. Inferences of fact are to be deduced by the jury, and, where there is evidence from which the existence of facts sufficient to support a verdict might have been inferred, the verdict will not be disturbed.' In support of a verdict, indeed, the appellate court will consider the evidence on behalf of respondent in its most favorable light. All reasonable inferences and deductions are to be made in his favor. All conflicts in the testimony are resolved in favor of the respondent, and the court will take as true the strongest view of the testimony in his favor." Jackson v. Grand Forks, 24 N. D. 601, 140 N. W. 718; Railroad Co.

v. Abernathey, 106 Tenn. 722, 64 S. W. 3; Muri v. White, 8 N. D. 59, 76 N. W. 503; Howland v. Ink, 8 N. D. 63, 76 N. W. 992; Cameron v. R. Co. 8 N. D. 124, 77 N. W. 1016; Nicoud v. Wagner, 106 Wis. 67, 81 N. W. 999.

CHRISTIANSON, J. This is an action for fraud and deceit. In his complaint the plaintiff alleges that on or about December 17th, 1918, he entered into a written contract with the defendant, by the terms of which the plaintiff agreed to purchase from the defendant a certain one hundred and sixty acre tract of land in Burleigh county in this state, and to pay therefor the sum of $4,000; that the plaintiff paid to the defendant under said contract, as and for the purchase price of said land, sums aggregating $896.34, paid taxes in the sum of $61.94, and expended the sum of $323.85 in making necessary improvements on the land. The plaintiff further alleges that he was induced to enter into said contract of purchase by reason of certain false and fraudulent representations made to him by the defendant; that among other things, the defendant represented to the plaintiff that the land was free from stone, and could all be cultivated; that said representation was false, and known to the defendant so to be at the time it was made; that in truth and in fact the land was not free from stone, but was thickly covered with stone and could not be cultivated. Plaintiff demanded judgment for the aggregate of the sums paid to the defendant, and expended for taxes and improvements.

The answer admits that the plaintiff and defendant entered into the contract for the purchase and sale of the land described in the complaint; also that the plaintiff made the payments alleged in the complaint. The answer, however, denies that the defendant made any false or fraudulent representations, whatsoever. The answer further alleges that the contract was cancelled by the defendant, on November 25th, 1921, on account of the failure of the plaintiff to make the payments stipulated in the contract. The case was tried to the jury upon the issues framed by the complaint and the answer. The jury returned a verdict in favor of the plaintiff for $800. Judgment was entered pursuant to the verdict. Thereafter defendant moved for judgment notwithstanding the verdict or for a new trial. The motion was denied

and he has appealed from the judgment and from the order denying his motion for judgment notwithstanding the verdict or for a new trial.

The principal questions raised by the defendant on this appeal relate to and involve a consideration of the sufficiency of the evidence to sustain the verdict.

The evidence adduced by the plaintiff is to the effect that on or about December 17th, 1918, he accompanied the defendant to the land in controversy; that they traveled in an automobile furnished or driven by the defendant; that they examined the buildings on the land. The plaintiff further testified that it was a foggy day; that the car was enclosed—that is, that the top and side curtains were up; that the ground was covered with two or three inches of snow; that he observed a small pile of scattered stones "along-side" the highway running on one side of the land; that he thereupon inquired whether the land was stony and that the defendant assured him that the land was free from stone. On that same afternoon after returning to town the contract of purchase was executed and the plaintiff paid defendant $50 on the purchase price. Shortly thereafter the plaintiff returned to his home in Canada. It appears that on December 29th, 1918, the plaintiff wrote to the defendant suggesting that a payment of $750 (which the contract stipulated should be paid on or before January 15th, 1919) be deferred and an extension granted until plaintiff arrived in the spring so that he could examine the land. This letter is not in the record. The reply written by the defendant, however, is in the record. This bears date January 2d, 1919. In this letter the defendant insists that payment be made according to the terms of the contract. Thereafter the plaintiff remitted $750 to the defendant. Plaintiff arrived from Canada some time in February 1919. According to his testimony he shortly thereafter discovered that the land was very stony and that he at once made complaint to the defendant. And it appears that certain discussion was had with respect to the plaintiff taking some other tract of land in place of the land involved in this suit, but that nothing came of such proposed arrangement. The evidence adduced by the plaintiff further shows that in addition to the two payments of $50 and $750 respectively, he later made one payment of $96.34 and also paid taxes in the amount of $61.94 and expended certain sums in making repairs of the buildings on the land. The

defendant also testified. He denied that he made the representations claimed by the plaintiff. He further denied that the plaintiff ever made any complaint of the quality or character of the land or ever claimed that the alleged representations had been made. He further testified that when they drove over and onto the land on December 17th, 1918, that the stony character of the land was clearly visible, and hence that the plaintiff well knew that the land was stony at the time he purchased it.

Defendant contends that inasmuch as plaintiff went upon the land and examined, or had an opportunity to examine, it before making the purchase that he is not in position to claim that he was misled by the representations as to the character of the land. In our opinion the contention is without merit. The plaintiff testified positively that he did not know that the land was stony; that while he was on the land it was covered with snow so that he could not see the stones; that he relied on the representations of the defendant that the land was free from stone and could be cultivated, and that he would not have purchased it at all if he had known the stony character of the land. If the jury believed plaintiff's story, there can, we think, be no doubt but that they were entirely justified in finding that the plaintiff was induced to purchase, and did purchase, the land in reliance upon the representations made by the defendant; that he paid the $800 to the defendant in the belief that such representations were true; that the representations so made were untrue, and that plaintiff was damaged as a result of his reliance thereon.

"Ordinarily, one who buys property has a right implicitly to rely upon representations of the seller; and, if they were false and made with intent to deceive the purchaser, the seller will not be allowed to urge that the buyer, by investigation, could have discovered their falsity." Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066; Guild v. More, 32 N. D. 432, 155 N. W. 44.

Defendant further contends that the plaintiff, by entering into possession of the land in the spring of 1919, and remaining in possession thereof after discovery of the alleged misrepresentations and subsequently paying taxes and, also, interest on the purchase price, ratified and affirmed the transaction and thereby waived all right to recover

damages for the alleged misrepresentations made at and prior to the time of the execution of the contract.

These various contentions are, we believe, wholly without merit. "A cause of action in deceit accrues immediately upon the successful consummation of the fraud, provided the fraud results in injury to the plaintiff. 20 Cyc. 90. He is not required either to complete or perform the contract (20 Cyc. 92), or tender a return of the property received under the contract, but is entitled to retain what he received, and sue for the damages caused by the fraud. 20 Cyc. 91.

"A contract thus entered into is voidable and does not become binding on the defrauded party until his free consent thereto is given. In other words, it does not become a valid contract or binding upon the defrauded party unless, with knowledge of the fraud, he ratifies or affirms it. Sell v. Mississippi River Logging Co. 88 Wis. 581, 60 N. W. 1065, 1067. The law naturally does not protect the wrongdoer, or give him any benefit or advantage by reason of the fraud he has perpetrated. And therefore, on discovery of the fraud, the defrauded party is given the option of rescinding or affirming the transaction. In case of rescission, he is required to act promptly on discovery of the fraud. In such case, the contract ceases to exist for any purpose, and the parties stand in the same position as though it had never been made, and hence, it is necessary that they be placed in the same position in which they were before the transaction took place. Therefore the party defrauded, in such case, is entitled to recover back whatever consideration he parted with, but he must also, return or offer to return to the other party whatever he received. In case of affirmance, he retains what he received, and is entitled to be compensated for the damages he sustained by reason of the false representation. . . .

"The transaction may be affirmed either expressly or by implication. And a person who retains as his own the property which he received in the transaction will necessarily be deemed the owner thereof. And, having elected to assume the position of owner, will be compelled to abide by the selection made, and to be not only invested with the rights and prerogatives but also burdened with the duties and liabilities, incident to such ownership. Hence, in such case the measure of damages for the fraud and deceit practised upon him is very properly predicated upon the basis that the defrauded party is the owner of the prop-

erty, and therefore his damage is equal to the difference in value between the property he received and what he would have received if the representations had been true. Such affirmation, however, does not remove all effect of the fraud, or render the contract in every essential equivalent to a contract originally made in good faith and free from fraud. The party guilty of fraud is not relieved from liability for his wrongful conduct, nor does the injured party waive his claim for damages." 20 Cyc. 87, 90; Guild v. More, 32 N. D. 432, 454, 455, 155 N. W. 44.

While it is true that the owner of a right of action for fraud may waive the same, the question whether he has waived it is largely one of intent, and, hence is generally one of fact for the jury and it is only in rare cases that it can be said, as a matter of law, that a party has waived such a right of action. Mathias v. State Farmers' Mut. Hail Ins. Co. 40 N. D. 240, 168 N. W. 667. And it is well settled that "acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested of abiding by the contract and waiving the right to recover for the deception. Acts which, although in affirmance of the contract, do not indicate any intention to waive the fraud, cannot be held to operate as a waiver." 20 Cyc. 93; Mathias v. State Farmers' Mut. Hail Ins. Co. supra. In the case at bar the question of waiver was not presented as one of the grounds of the motion for a directed verdict; nor does it appear that the question was raised at all during the course of the trial. Nor do we believe that, under the evidence in this case, the court would have been justified in finding waiver as a matter of law. If the plaintiff told the truth (and the jury found that he did), there can be no question but that he purchased the land from the defendant and paid him $800 as part of the purchase price, all in reliance upon certain representations made by the defendant to the effect that the land was free from stone and could all be cultivated; and that the representations so made were, in fact, false. The evidence on the part of the plaintiff further shows that when he entered into possession of the land and for some time thereafter the defendant promised that he (defendant) would substitute some other and more desirable tract of land for the tract covered by the original contract of purchase, but that when plain-

tiff pressed him to comply with such promise that no reasonable proposition was made; and, in fact, no good faith effort made by the defendant to carry out such promise. We are entirely agreed that under the evidence this court cannot say that the plaintiff manifested any intention to condone the fraud practiced upon him and to waive his right of action therefor.

Is is further contended by the defendant that inasmuch as plaintiff had defaulted in the payments stipulated in the contract he had no legal right to rescind such contract and recover the payments made thereunder. A sufficient answer to this contention is that the plaintiff did not rescind or seek to rescind the contract. On the contrary he affirmed the transaction and brought an action to recover damages for the deception practiced upon him. The very action which he so instituted was in itself an affirmance of the transaction. Guild v. More, supra.

It is clear that an erroneous measure of damages was adopted in this case. However no question was raised upon or during the course of the trial as to the measure of damages. Plaintiff's counsel in preparing and presenting his case proceeded on the theory that the measure of damages was the amount plaintiff had parted with in reliance upon the false representations, and upon and during the course of the trial this theory seems to have been accepted and acquiesced in by defendant's counsel, and it was also adopted by the trial court in its instructions to the jury. The measure of damages so adopted was erroneous. Under the laws of this state the correct measure of damage in an action for fraud and deceit is the difference in value between what the property would have been worth if as represented and what it actually was worth at the time of the sale. Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066; Beare v. Wright, 14 N. D. 31, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057; Guild v. More, 32 N. D. 432, 155 N. W. 44; Minneapolis Threshing Mach. Co. v. Huncovsky, 49 N. D. 1086, 194 N. W. 834. But inasmuch as the parties adopted a certain measure of damages, and the case was tried in the court below on the theory, that that was the proper measure of damages in the case it will of course be adhered to on appeal. 3 C. J. 737. And there is nothing in the record to indicate that the measure of damages so adopted was not, in fact, favorable to the defendant.

Error is also predicated upon certain rulings in the admission of evidence, and in the court's instructions to the jury. The assignments of error relating to the instructions are not supported by argument and hence may be deemed waived. We deem it proper to say, however, that it is not at all apparent that any of the errors so assigned have any merit. The same is true of the errors assigned upon rulings in the admission of evidence.

It follows that the judgment and order appealed from must be affirmed. It is so ordered.

BRONSON, Ch. J., and BIRDZELL, JOHNSON, and NUESSLE, JJ., concur.