SAWDEY, Respondent, vs. SCHWENK and another, Appellants.

*December 3, 1957—January 7, 1958.*

For the appellants there was a brief by *Lehner, Lehner & Behling* and *Adolph P. Lehner* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Howard N. Lehner.*

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Louis D. Gage, Jr.,* and *Roy E. Berg,* all of Janesville.

CURRIE, J.   The issues on this appeal are as follows:

(1) Was the plaintiff Sawdey guilty of negligence with respect to speed as a matter of law?

(2) Did the method of submitting to the jury the issues as to damages result in duplication?

(3) Are the damages excessive?

(4) Was Sawdey's negligence at least 50 per cent of the total aggregate negligence of both drivers as a matter of law?

The collision occurred at or near the top of a long hill. Sec. 85.40 (2) (b), Stats. 1953, requires that an operator of a motor vehicle shall operate the same "at an appropriate reduced speed . . . when approaching a hill crest." It is the contention of counsel for the defendants that Sawdey violated such statutory provision as a matter of law, even though the jury specifically found that Sawdey was not negligent with respect to speed.

The Hilltop Restaurant is located on the north side of the highway at the crest of the afore-mentioned hill. Schwenk, prior to the accident, had parked his car in the parking area of such restaurant and was in the act of emerging from a private driveway leading from such parking area to Highway 11 when his car was struck by the Sawdey automobile. Schwenk testified as to having seen the approaching Sawdey car at a point where he had stopped his vehicle 12 feet from the highway, and then saw the lights of the approaching Sawdey car 300 to 370 yards to the east. If Schwenk had this distance of clear visibility, so did Sawdey. Sawdey

testified that as he neared the top of this hill he met a car coming from the opposite direction and dimmed his lights. Immediately after passing such vehicle Sawdey saw the Schwenk car entering the highway and but 50 feet distant. He estimated his speed to have been 45 to 50 miles per hour at the foot of the hill and from 40 to 45 miles per hour when he first saw the Schwenk car.

This court cannot hold as a matter of law that a speed of 40 to 45 miles per hour going up a hill on a state trunk highway, with the long range of unobstructed vision that was present here, violated sec. 85.40 (2) (b), Stats. 1953. There was a stronger case made out for holding that there was such a violation as a matter of law in *Lake to Lake Cooperative v. Andrews* (1953), 264 Wis. 170, 58 N. W. (2d) 685, but the court there held that the issue nevertheless was one for the jury.

We turn now to the issue of damages. It is the contention of counsel for the defendants that a duplication of damages resulted in submitting to the jury both questions 6 (a) and 6 (b). However, after carefully considering the instructions of the learned trial court given to the jury with respect to questions 6 (a) and 6 (b), we are satisfied that such contention is groundless. It is optional with a trial court whether to embrace the element of future wage loss in the same damage question covering future disability, or to submit it separately as was done here.

Attack is also made upon the jury's award of $2,000 damages for future wage loss in answering question 6 (b) of the verdict on the ground that the same is excessive. As a result of the collision both of Sawdey's knees struck the dashboard of the car with such force as to leave imprints of his knees therein which are visible on a photograph exhibit. The plaintiff's medical witness testified that in his opinion Sawdey had sustained a permanent disability to the soft tissue of his knees. Percentagewise, such physician estimated this

permanent disability to constitute 20 to 25 per cent loss of use of his legs. Such disability has prevented Sawdey from performing some movements necessary in certain occupations for which he was previously fitted, and has forced him to give up his prior employment in the Fisher body plant. At the time of injury he was forty years of age and had a life expectancy, according to the American Experience Table of Mortality (sec. 314.07, Stats.) of 28.18 years. In view of these facts we do not deem an award of $2,000 for future wage loss to be excessive.

Counsel for the defendants also contend that the award of $2,000 for future medical expenses is excessive, and we agree. This court in *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651, held that no award of damages for future pain and suffering can be upheld which is not supported by expert medical testimony. We deem that the same rule is applicable in the case of an award for future medical expenses.

Sawdey's medical witness, his attending physician, testified that he did not think Sawdey would probably spend much money for further treatment. The physician, who testified as defendants' expert medical witness, was of the opinion that Sawdey sustained no permanent disability, and that his present disability probably would be cured if he would undergo physical-therapy treatments. In such doctor's opinion from two to three of such treatments per week would produce such cure if extended over a three-month period, but it might take as long as six months. The cost of the same is $3 per treatment. Assuming the maximum of the three treatments per week extending over a six-month period, the total cost would be $234. This is the maximum amount of damages for future medical expense that the jury could properly have awarded. The amount actually awarded was $2,000. The amount included in the judgment for future medical expense is 58 per cent of $2,000, or $1,160.

The plaintiff is entitled to recover only 58 per cent of the maximum amount awardable of $234. The defendant, therefore, should be accorded the option of having the judgment reduced by the sum of $1,025.28 or of having a new trial limited to the issue of damages for future medical expenses.

A word of explanation is in order as to why we do not follow the customary practice of fixing the least amount that an unprejudiced jury properly instructed would allow for future medical expenses, and accord the plaintiff the first option of either consenting to have the judgment reduced to such amount or having a new trial. Cf., *Campbell v. Sutliff* (1927), 193 Wis. 370, 214 N. W. 374. The case of *Risch v. Lawhead* (1933), 211 Wis. 270, 278, 248 N. W. 127, points out that this rule applies to cases of unliquidated damages. Therefore, by implication it necessarily is inapplicable to damages liquidated in amount. By the same reasoning, we do not consider that such rule must be followed in a situation like the instant case where the maximum of recoverable damages is fixed in dollars and cents. This is because there is no evidence in the record which will sustain an award of damages to the plaintiff in excess of such maximum, and, therefore, plaintiff suffers no prejudice by not being accorded an option of a new trial.

We leave undecided the question of whether it is necessary for a plaintiff in a personal-injury action to establish future medical expenses by proof that fixes the same in dollars and cents. However, where the record, as here, does establish without dispute the maximum amount that will be required to be expended for such purpose, an award of more than such sum must be held to be excessive.          •

In addition to the issues here discussed, defendants' brief, in listing the "Questions Involved," includes the question of whether Sawdey was at least 50 per cent negligent as a matter of law. However, the body of the brief advances no

argument on such issue. In the absence of such an argument, we do not feel called upon to give more than a fleeting comment with respect to such question. This court has asserted over and over again that it is only in extraordinary fact situations that it will set aside a jury's answer to the comparative-negligence question and hold as a matter of law that one of two or more tort-feasors is guilty of at least 50 per cent of the total aggregate negligence. The instant case does not come close to presenting such an extraordinary fact situation. In fact, it is about as typical a "mine run" automobile accident case as one can find.

Ordinarily, the appellant defendants would be entitled to full costs on this appeal because they have secured substantial relief as a result thereof. However, although appellants' brief and appendix were required under our rules to have been served on October 24, 1957, they actually were not served until November 15, 1957. Under Supreme Court Rule 44 (sec. 251.44, Stats.) no costs, therefore, will be allowed to the appellants for printing their brief and appendix.

*By the Court.*—The judgment is modified by reducing the amount thereof by the sum of $1,025.28, and, as so modified, is affirmed, unless within twenty days from January 7, 1958, the defendants shall file with the clerk of this court a notice in writing that they elect to have a new trial limited to the issue of plaintiff's damages for future medical expenses. If such notice electing such new trial is timely filed, the judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion. In taxing costs on this appeal the defendants shall not include any item for the printing of their brief and appendix.