ROBERT LAMONT v. INDEPENDENT SCHOOL DISTRICT NO. 395, WATERVILLE, AND ANOTHER.

154 N. W. (2d) 188.

November 3, 1967—No. 40,524.

*Farrish, Zimmerman, Johnson & Manahan, Miles B. Zimmerman,* and *James H. Manahan,* for appellants.

*Heinen & Christian, W. L. Heinen,* and *H. G. Dressel,* for respondent.

OTIS, JUSTICE.

This action arises out of a two-car collision. Plaintiff obtained a verdict of $20,000. The trial court found that the damages were excessive and appeared to have been given under the influence of passion or prejudice. A new trial was ordered unless plaintiff agreed to a remittitur of $5,000, to which he thereupon consented. Defendants have appealed.

The issues concern the propriety of counsel's argument to the jury and the sufficiency of the evidence to support an award for future medical expenses.

The collision occurred on December 5, 1963, at about 7:30 a. m., at the intersection of a graveled township road, on which defendant Miner was driving a school bus in an easterly direction, and a blacktop county road, on which plaintiff was driving his automobile in a northerly direction. Defendant entered a T-intersection, turning to his left without seeing plaintiff until the moment of collision. The highways were icy, but the terrain permitted defendant to see 160 feet to his right. He was obliged to yield the right-of-way as directed by a sign posted at the intersection. The impact occurred between the right front wheel of the bus and the left front of plaintiff's car. Under all of these circumstances, we have concluded the jury was justified in finding the defendants liable. With respect to the issue of liability the verdict will not be disturbed.

■ As a part of his closing argument, counsel for plaintiff characterized one of defendants' doctors in the following manner:

"* * * Before actually going into his injuries I'd like to make some discussion about Dr. Meredith. I have known Dr. Meredith for a number of years. I think he is a fine doctor, I think he is a fine young man. My questions as to how much he gets paid for examinations, how much he gets paid for testifying, how often he testifies for the defense in cases of this kind were designed for this purpose. Not to discredit him or to say that he had lied here on the witness stand, no. But I think that any jury is entitled to know the background of a man who is a professional witness so that they can view his testimony—."

Defendants' objection was sustained but their motion for a mistrial was denied. The court admonished the jury as follows:

"The statement that Dr. Meredith is a professional witness I believe is a misstatement of the record and the jurors are instructed to disregard it and the motion for mistrial is denied."

Thereafter plaintiff's counsel continued:

"Now, Mr. Dressel and I, I think, have a combined experience of some sixty-five years in the practice of law. I have twenty-five and I will just give Harold credit for forty. I don't think he wants to admit to any more. Say it's sixty-five years. We feel it is our duty as lawyers when we argue a case to the jury to give you the benefit of our experience and of our thoughts [as] to what your verdict should be."

The court sustained an objection and directed that the statement be disregarded. Thereupon, plaintiff's counsel proceeded with the following argument:

"* * * Suppose that someone was approached and said, 'I know an easy way for you to make fifty thousand dollars. All you have to do is get yourself involved in an automobile accident. All you have to do is be badly injured enough so you have to suffer and sustain a chronic low back strain or sprain. All you have to do at twenty-two years of age is to look forward for the rest of your life to pain and suffering and disability every day, some days worse, some days better. That is all you'd

have to do and you can have fifty thousand dollars.' If someone made that offer to me I know what I'd tell them to do with it."

An objection was overruled, and plaintiff's counsel went on to say:

"What do you think that hypothetical person would say if he was offered that type of proposition and in connection along with that you have got to work as a barber every day of your life with that bad back, too, in order to get this fifty thousand dollars."

He then asked the jury to award $29,200 for plaintiff's backache, stating:

"* * * Out of that figure he, of course, would have to pay for any future medical expense he may have. Both Dr. Buesgens and Dr. Strobel told you he would have future medical expense. They couldn't tell us exactly what it would be, but you can draw to your own experience to some figure what would cover future medical expense."

Counsel continued with this argument:

"* * * Actually Mr. Dressel and I when we started this suit sued for thirty thousand dollars. That was our feeling of the value of this lawsuit."

An objection was sustained, and again the court admonished the jury as follows:

"The statement by counsel as to what the idea of the value of this case was by Mr. Heinen and Mr. Dressel is to be ignored by the jury and you are instructed to pay no heed to it for it isn't for their judgment to be expressed to you what they think it is worth. It is for you to decide."

Notwithstanding the court's prior ruling, at the conclusion of his argument plaintiff's counsel injected his own opinion concerning damages in the following manner:

"* * * It is my thought and I believe it is yours that thirty thousand dollars would be an adequate figure to compensate him for the pain and suffering he will have to go through the rest of his life."

In the light of this record, we concur in the court's finding that the verdict resulted from passion and prejudice. Notwithstanding the remit-

titur, we hold that a new trial on the issue of damages is required. Plaintiff sustained no external injuries as a result of the collision. He was never hospitalized and lost only one full day of work except for time expended in visiting his doctor. His symptoms were largely subjective. The permanent injuries were limited to a 10- to 15-percent partial disability of his low back. His medical expenses were less than $400; he lost only about $260 in income; and his total out-of-pocket expenses, including damage to his automobile, amounted to only about $1,000.

The plaintiff's closing argument was offensive in a number of respects. It was improper to characterize Dr. Meredith as a professional witness.[1] Likewise, we disapprove of counsel's gratuitous disclosure of the number of years he and his associates had practiced law and his firm's appraisal of the value of the litigation.

These improprieties were compounded by counsel's inviting the jury to place itself in the position of the plaintiff and by asking how much they would take to suffer the injuries which plaintiff sustained in the accident. This was accomplished by the thinly veiled use of a "hypothetical person" rather than by expressly referring to the jurors themselves.[2]

Finally, both counsel and the court erred, as we hold, in permitting the jury to award damages for future medical expenses without any evidence as to what those expenses would be. Although we have permitted an award for loss of future earning capacity in situations where the jury is competent to assess the likelihood of plaintiff's diminished productivity,[3] we have not allowed future medical expenses without an estimate of what they might be. This is a matter which the jury cannot compute blindly without expert testimony. It cannot be left to their speculation.[4]

[1] See, Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 378, 77 N. W. (2d) 433, 440, 58 A. L. R. (2d) 921 (dissenting opinion).

[2] Colgan v. Raymond, 275 Minn. 219, 225, 146 N. W. (2d) 530, 534; Morrison v. Carpenter, 179 Mich. 207, 146 N. W. 106; Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S. W. (2d) 264; Russell v. Chicago, R. I. & P. R. Co. 249 Iowa 664, 86 N. W. (2d) 843, 70 A. L. R. (2d) 927.

[3] Mack v. McGrath, 276 Minn. 419, 422, 150 N. W. (2d) 681, 683.

[4] Tully v. Mahoning Exp. Co. Inc. 161 Ohio St. 457, 119 N. E. (2d)

Since the trial court itself found the verdict to be the result of passion or prejudice and the record amply supports that finding, we hold there must be a new trial on the issue of damages.

Reversed and remanded for a new trial on the issue of damages.

ROGOSHESKE, JUSTICE (dissenting).

Believing that a trial judge is in the best position to appraise the prejudicial effect of any improprieties which may occur during trial and that in this case an experienced judge did so by granting a substantial remittitur, I would affirm.

MR. JUSTICE SHERAN and MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

831, 45 A. L. R. (2d) 1144; Sawdey v. Schwenk, 2 Wis. (2d) 532, 87 N. W. (2d) 500, 69 A. L. R. (2d) 1256.