**Charles PALMER, as Trustee for the Heirs of Vianne Palmer, Decedent, Plaintiff,**

**v.**

**Claudia J. HALUPLZOK, Defendant.**

**No. 3–68–Civ.–123.**

United States District Court
D. Minnesota,
Third Division.

Jan. 10, 1969.

Samuel H. Hertogs, McMenomy, Hertogs & Fluegel, Hastings, Minn., for plaintiff.

Thomas W. Newcome, Newcome, Wallace & Newcome, St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The question posed by this post-trial motion in a diversity case is whether a $20,000 verdict for the wrongful death of a two-and-one-half-year-old female child is excessive under Minnesota's Lord Campbell's Act, M.S.A. § 573.02, which limits recovery to $35,000. I think so.

On December 6, 1968, plaintiff as trustee for the heirs of his two-and-one-half-year-old daughter, Vianne, received a jury award of $20,000 in compensatory damages for her claimed wrongful death resulting from an auto accident.

Defendant moves that the verdict be set aside as excessive and that a new trial be granted. He suggests "that the verdict of $20,000 is both unrealistic and excessive and should be reduced to a reasonable amount or a new trial be granted on such issue."

Plaintiff responds that because under Minnesota law, at least since the case of Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355 (1961), a plaintiff in an action for wrongful death may recover for the loss of aid, comfort, and society in addition to losses of earnings, contributions, and services, the verdict represents a fair and reasonable amount of damages for the loss by death of a healthy two-and-one-half-year-old daughter, especially in light of the deflated value of the 1968 dollar. Additionally, the plaintiff argues that there has been no showing that untoward passion and prejudice were injected into the trial and that lacking such a showing, the verdict of the jury must stand.

■ We begin with the general proposition that:

"No award can be sustained unless it stands the test of reasonableness in the light of its over-all effect." Hallada v. Great Northern Railway Co., 244 Minn. 81, 69 N.W.2d 673, 687 (1955).

Money damages, especially in cases such as this involving the death of an infant child are a roughshod vehicle of compensation, not capable of the nicest adjustment. Nevertheless,

"the maintenance of verdicts at a reasonable level is essential to the systematic functioning of our economic and business system. Distorted figures, if persistently reached in jury verdicts, will result in grave maladjustments and gross injustices. * * Judicial decision must be rendered with a consciousness of all aspects of our society. Our law has been evolved for the purpose of regulating society." Becksted v. Skelly Oil Co., 131 F.Supp. 940, 944 (D.Minn.1955).

Thus, merely because of the

"lack of a definite standard we do not forfeit our recourse to common sense and social practicality in given cases." Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie R.R. Co., 244 Minn. 1, 68 N.W.2d 873, 889 (1955).

■ Remittitur is a fair and efficient device for curbing excessive jury verdicts.

"Remittitur * * * has been established in Federal and state practice for a long time." Genzel v. Halvorson, 248 Minn. 527, 80 N.W.2d 854, 856 (1957).

See also, Brabham v. Mississippi, 96 F.2d 210, 214 (5th Cir. 1938); Becksted v. Skelly Oil Co., supra, 131 F.Supp. at 944. In Minnesota,

"It is well settled that, in actions of this kind, the trial court may, in the exercise of sound discretion, when it deems a verdict excessive and the result of passion and prejudice, deny a new trial on condition that the prevailing party remit such amount as shall leave the amount of recovery not excessive in the judgment of the court." Larson v. Wisconsin Ry., Light & Power Co., 138 Minn. 158, 164 N.W. 666, 668 (1917).

In fact,

"the responsibility for granting remittitur is one which the trial court should not hesitate to accept when the circumstances require it." Tanski v. Jackson, 269 Minn. 304, 130 N.W.2d 492, 497 (1964).

■■ While it is frequently stated that remittitur is proper only when an excessive verdict is the result of passion and prejudice, see, e. g., Genzel v. Halvorson, supra, 80 N.W.2d at 856; Litman v. Walso, 211 Minn. 398, 1 N.W.2d 391 (1941), close study reveals that there are recognized degrees of passion and prejudice, and the proper corrective measure varies with the particular degree. Thus in the *Genzel* case, the court distinguishes the situation where passion and prejudice are of such a limited effect as to taint only the verdict amount, and not other issues. In such a distinctive situation, the use of remittitur is considered advisable. See, e. g., Ford Motor Co. v. Mahone, 205 F.2d 267 (4th Cir. 1953); Becksted v. Skelly Oil Co., 131 F.Supp. 940 (D.Minn.1955); Palmer v. Moren, 44 F.Supp. 704 (M.D.Pa.1942); Larson v. Wisconsin Ry., Light and Power Co., 138 Minn. 158, 164 N.W. 666 (1917). That such a recognition of degree is still viable in Minnesota is implicit in Lamont v. Independent School District No. 395 of Waterville, 278 Minn. 291, 154 N.W.2d 188 (1967).

■ Furthermore, Minnesota cases indicate that the existence of passion and prejudice is not the *sine qua non* of remittitur. In Thill v. Modern Erecting Co., 272 Minn. 217, 136 N.W.2d 677 (1965), the court affirmed a remittitur where passion and prejudice were expressly found to be lacking, the excessiveness being determined to be rather the result of a too literal application of mathematical formulas of damage compu-

tation. To similar effect, see, Hallada v. Great Northern Ry. Co., 244 Minn. 81, 69 N.W.2d 673 (1955); Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie R.R. Co., 244 Minn. 1, 68 N.W.2d 873 (1955).

It is misleading to demand that a specific identifiable aspect of the trial infected the size of the jury verdict. The real danger to be avoided is excessive (or inadequate) verdicts. Where they occur, the cause may be obvious and easily identifiable, or it may be inferred, simply from the unreasonable size of the figure the jury has returned. The cause may, from a broad view of the trial, be ascribed to pity, passion, or too rigid calculation without regard to the over-all effect. In any case, the trial court's discretion is broad. Litman v. Walso, 211 Minn. 398, 1 N.W.2d 391 (1941); 6A Moore's Federal Practice ¶ 59.05[3].

In the present case, the only item of special damages proven was the amount of funeral and burial expenses—$745.55. There having been no showing of earnings, contributions, or services lost, the remaining $19,254.45 must represent the jury's calculation of the value of the lost comfort, aid, and society. Needless to say, such a loss is virtually incalculable except in a rough and gross manner. Jury verdicts which have been deemed reasonable in similar cases involving the wrongful death of infant daughters who were likewise the object of parents' love and hope furnish the best available guide. Necessity, not callousness, ordains this approach.

In this light, then, we deem the present verdict of $20,000 to be excessive. A sampling of verdicts indicates that society, through its juries, has determined that, as a general proposition, the proper compensation for the wrongful death of a minor varies directly, if not proportionately, with the age of the minor. This court is only disposed to note and not to explain this tendency. Samples of verdicts may be found in 5B Dun.Dig. Death by Wrongful Act § 2617, and 14 A.L.R.2d 550 and its succeeding supplementations. For example, a list of 25 cases involving the wrongful death of children less than seven years old, representing various jurisdictions from approximately 1954 to 1964, shows a mean verdict of $10,000. On the other hand, the finding in Herbes v. Village of Hollingford, 267 Minn. 75, 125 N.W.2d 426 (1963), that the verdict of $21,000 for the wrongful death of a 19-year-old son is excessive, is not atypical. Further, the court is mindful of the fact that the Minnesota Wrongful Death Act, M.S.A. § 573.02, limits recovery in any case, regardless of the decedent's earnings, contributions, or services shown to be lost, to $35,000. That ceiling, and the foregoing and other examples satisfy the court that a base amount of $10,000 is not an unreasonable amount of compensation for the wrongful death of a two-and-one-half-year-old girl. Adding to this figure a recognition of deflated dollar value, and the amount of special damages, and allowing for any special factors which the jury might reasonably have found to exist in this case, it is concluded that $12,500 is an adequate and reasonable amount of damages.

While a review of the trial proceedings does not reveal that any overt passion or prejudice intruded, nor even raise the suspicion that the jury blindly applied a rigid damage formula, we do find that the amount of the verdict is unjustifiably excessive. While Vianne Palmer was shown to have been healthy and bright, she was not shown to possess any unique quality or interest in an objective sense. Simply from the amount of the verdict we infer that somewhere pity arose in the deliberations of the jury and resulted in an unwarranted increment.

The motion for a new trial on the issue of damages alone is granted unless within ten (10) days from the date of this order the plaintiff shall file a written consent that the amount of the verdict be reduced to $12,500.